Good morning, everyone. I'm delighted to be sitting here in Portland with my wonderful colleagues, Judges Forrest and Sung. The cases will be called in the order listed on the docket. The first case on calendar for argument is Pranger v. Oregon State University. Counsel for appellants, please approach and proceed. Good morning, Your Honors. My name is Jay Kim from the law firm of Lynch Carpenter. I'm here to represent plaintiff's appellants, Daniel Pranger and Garrett Harris. I'd like to reserve three minutes for rebuttal. All right, counsel, please be reminded that the time shown on your clock is your total time remaining. Thank you, Your Honor. This is a class action brought by students of Oregon State University seeking a partial refund of tuition and fees for the winter and spring terms of 2020 based on the university's breach of the implied contract to provide in-person instruction and full access to the campus during the students' tenure at the universities. Instead, the university transitioned these terms to fully remote instruction and closure of the campus as a result of the COVID pandemic and Oregon Governor Brown's stay-at-home executive orders relating to the pandemic. As an initial matter, we're here today because OSU has finally succeeded in its third bite at the apple to try to get this case dismissed before any discovery has been permitted. Specifically, the district court denied the initial motion to dismiss, and then it denied the subsequent, excuse me, denied the motion to dismiss as to the breach of contract claim and then denied the motion for reconsideration, this time specifically rejecting its impossibility of defense holding that required analysis of the facts and evidence. Counsel, at this point in the case, the only issues remaining relate to Oregon law. And I'm aware that there is another case raising very similar issues proceeding in the Oregon courts. I believe it's at the Oregon Court of Appeals at this point. Should we hold off in deciding this case and wait and see what the Oregon courts have to say about these issues? The Oregon case, the opening brief is actually due today in the state appellate court. I think that case is so far behind in the docket, at least from our perspective, we believe this court is fully in position to roll on these issues. So we're here today because the OSU finally succeeded on the ad issue motion for summary judgment with the court denying plaintiffs any opportunity to conduct any discovery. And it granted the summary judgment based on the defenses of impossibility. So it didn't grant the motion to dismiss, it ruled on summary judgment. Yes, it granted summary judgment, excuse me, it granted summary judgment based on the defenses of impossibility and contract modification. While this court has to review this appeal on the de novo standard, I think it's worth noting that in order for it to rule as a matter of law, the district court did assume for purposes of the MSJ that OSU had a valid contract with its students to provide in-person instruction and full access to the campus facilities throughout their entire enrollment at OSU in exchange for a full tuition payment. Council, in your view, what was the material disputed issue of fact that precluded summary judgment? Sure, so regarding the defense of impossibility, I think the first thing to note is that numerous courts in Oregon have stated that determining whether impossibility is a defense is a question of fact, and specifically as to the issue of who bore the risk, the issue of reasonable foreseeability, and- But in this record, what was the disputed material issue of fact in this record? Right, so I think that raises two points. The first one is that their first argument and their responsive brief, OSU's responsive brief, is that we didn't state specific facts or we didn't identify specific genuine issues of fact, and that, first of all- So that's why I'm asking you- It begs the question, we were not even given opportunity to do any discovery on these issues. But on summary judgment, you're allowed to put in affidavits or any other material issues- Sure. Materials that you have to raise the material issue of fact. Sure, so- What material issue of disputed fact was raised by your clients? Sure. All we had access to was publicly available. And so that includes, OSU's had a long-developed infectious disease response protocol that specifically identified the imminent threat of coronaviruses. The state of Oregon has issued orders to close schools during the H1N1 pandemic. And I would just state the general fact that every major research institution, every major public entity, especially in the West Coast, has been familiar with the threat of coronaviruses coming over here. We had SARS and MERS. Those were just in Asia. The governments of Korea, Japan, and China had shutdown orders and stay-at-home orders. And we've discovered what's obvious, that there are thousands of flights coming from those countries to the West Coast every single day. And so those are just the tip of the iceberg that I would just point to for both the argument that we should have been providing an opportunity to do discovery, additional discovery, but that even with what is publicly available, it's clear that OSU, at their very least, is a question of fact whether they foresaw this pandemic as well as the government order. So it's your position that the public materials would inform them of the extensive pandemic, the extensive worldwide pandemic that hadn't been seen in over 100 years. So you think that was a disputed issue of fact? Yes, I think those things are included in a dispute of facts. On top of the fact, again, OSU had a longstanding protocol and committee that was monitoring these things. And so, you know, OSU is a major institution. It's a major research institution. It excels in science, in all the sciences, and this was no mystery to them. So what was the university supposed to do in view of the governor's shutdown order? Sure, and I think that's a distinction that OSU tries to make in this case, that there's an important distinction between the actual pandemic, whether you foresaw the pandemic versus whether they foresaw the governor's orders. And I think Oregon cases have been clear that that distinction is only a matter of degree. It's not a dispositive fact that renders... But as a factual matter, what could the university have done in view of the governor's shutdown order? The university, I would think, should have done what it did. But that's a different fact from in doing what it did, whether it has damaged students based on preexisting contracts that it had with the students. But doesn't that render it impossible to provide in-person services if the governor required a shutdown? Again, a complete rebuttal of the defense of impossibility is foreseeability. And so that was my first argument that I've been trying to make, is that because they're the ones that foresaw the risk, resumed foresaw the risk, they bore the responsibility in the event. And therefore, they have to pay the damages for it. Is it your position... I'm sorry. Is it your position that the university should have foreseen the governor's order? A, yes. And B, I would point to the case that we cited, both parties cited, Savage v. Peter Kiewit Suns Company, where it held that a sandblasting company assumed the risk of both the damages that might come out of their sandblasting performance as well as the risk of a court order enjoining the sandblasting performance, even though the sandblasting company had never even heard of what an injunction is. And so that's the appellate court in Oregon specifically stated that it doesn't... Even if they didn't foresee a specific change in the law, that if there's sufficient notice of the underlying events, then that's sufficient for foreseeability. But again, that's aside from the point that every time there has been a pandemic, every government that's involved has always done these shutdown orders. That's always foreseeable, I would argue. I have a couple of questions related to the contract. The summary judgment briefing that you, your clients submitted, argued that the contract was yearly. And then also argued that the contract was yearly. And then a few pages later, argues that the contract is for the duration of enrollment. And I'm trying to figure out what to do with the fact that we have two contrary statements. So what is, your position is period of enrollment? So I thank you for the question, Your Honor. So what we were going by with in the MSJ, at least in this appeal, is what I mentioned at the outset is what the district court assumed to be the contract, the existing contract. And the district court specifically said. So that's an interesting, so I understand that the district court made that assumption. It seems to be for efficiency purposes, but does your, I guess what I'm getting at, is do your clients agree with that assumption? Yeah, absolutely. I think our first- Duration of enrollment.  Oregon State University is a prestigious university, public university. It's typically for undergrads, for instance, it's a four-year university. And when students go off to college, they're going to Oregon State University, they're enrolling in an on-campus program that's been provided historically for 100 years, and they're expecting on-campus instruction and access to the campus for the duration of their tenure. And so when we're talking about, this is an implied and fact contract case. And so what are all the different representations and course of conduct that come into the mix in determining the scope of that contract? And so we would argue that the history of it, what consumers expect, what students and families expect when they're sending their students, their children off to these universities- Aren't those questions of fact? They're all absolutely questions of fact. And that's what we're here to just point out, is that there's questions of fact all over the place here. And this is beyond, before we were even able to do any discovery. I have another question that I want to be clear about. It's not clear to me which term your clients are arguing was breach. Is it just spring 2020 term was breach, or is it every term that they decided to stay on-campus, or stay enrolled while remote instruction was being provided? Sure. The complaint specifically lists winter and the spring term of 2020, because those are the terms where the announcements- Why winter? Because winter was in-person except for exams. So winter, you want breach there too? Admittedly, spring is our primary claim, Your Honor. Okay, so, but it's not fall of 2020 and so on? No, Your Honor. Okay. On the duration of the contract issue, if I understand correctly, you're saying there's, we have to assume a contract for the duration of their college education. It's a bilateral contract, so are you saying that the plaintiffs would, were committing to pay tuition to OSU for the duration of their employment? Right, so that's- Sorry, for the duration of their college education. Yes, so that's precisely what the district court assumed for purposes of the MSJ, and we would agree with that. Again, we haven't done any discovery into the full scope of the contract. There are policies that were fully, you know, that your clients had notice of. I mean, the contract itself, they can't not know what the contract, they have to know about the basis of the contract, right? So, but under your interpretation of the contract, no student could ever withdraw and not, and cease paying tuition. Right, so, and that's where I think the distinction between a case that involves an express feature contract and a case involving an implied and fact contract differ a little bit, is it's not like there was a specific, you know, language of a term that's specific to this case. It's the entire representations that are made, it's the course of conduct by the university. And so, in that sense, students, there's an argument to be made that students are obligated to pay this because they've enrolled in a four-year university that in order to be able to complete the program and get their degree, they've always have to pay timely there for each of the terms. There's another way to look at it that the academic calendar and the course catalog are published for each academic year. And so, when they're represented exactly which, you know, courses and all these on-campus courses, you know, overwhelming majority of these are on-campus courses that are available to them as they commit to each annual year, that perhaps it's by the year that they're obligated to pay. But again, those are things that can be fleshed out through discovery, and we just haven't had an opportunity. And that's one thing, I don't understand, because your argument is that all these university policies and communications with the students create an implied contract. I think for that to happen, they had to be conveyed, communicated to the students. So, why do you need discovery to determine what the basis of the contract is? Course of conduct, you know, like, you know, it's interesting that- There are some things that the students don't actually already know about to form the basis of the, why do you need discovery to show what the terms and the basis of the contract are? Aren't those, wouldn't those have to be in communications or policies that were known to the students? Right, so what we don't have access to is we don't have access to everything that the university sent out to their students. We don't have access to all of their marketing materials. We don't have access to all of their acceptance letters. We don't have access to what their website have said for, you know, for students that were seniors. You know, we're talking about, you know, materials going back four years, at least, to when they were first enrolling into the program. And so, we don't have, Oregon State's sitting on all that stuff. We can try to dig up what's publicly available. Do the complainants have to allege as to at least make specific allegations as to what they recall being stated in those things to form the basis of the contract? Sure, and we've done that here. The complaint lists numerous things. They talk about their campus all the time. They talk about all the facilities that are available, the hundreds of student clubs that are available, the importance of in-person labs and having access to professors and all those things. They talk about all that stuff. And our understanding is that they've been doing that for a very long time. And so, for us to be able to get a chance to do discovery, flesh out exactly what they've been systematically sending out to all their students and getting access to what they've been representing, we just want an opportunity to do that. And I think that those same facts and those same discovery tie into the actual underlying facts that are in dispute regarding the defenses of impossibility and a modification of the contract. And I would also mention, a four-year college at Oregon State University is not just some fungible product. It's not like buying a watch and deciding that there was something wrong with it and you get your money back. We're talking about the largest purchase that most families will ever make in their life. The biggest commitment, the thing that affects students for the rest of their careers, this is an important decision. It's a decision that has long duration to it. And it's not something that, on a whim that if something changes, even for the best of the reasons, if you're still transitioning to something that on a market-based level is priced less than what they contracted for. Council, is it your position that a degree from Oregon State University that was obtained during the pandemic is worth less than a degree that was obtained with full in-person instruction? Right. So we're not- Is that your position? No, no, no, it is not our position. And I want to focus on the word worth because we're not talking about worth. We're not, we don't want to get into the whole educational malpractice issue. One judge- You have to show damages. Yeah, one judge I was in front of threw out the example of, if you buy a Corvette versus a Corvette with a convertible, they both get you to the same place, but you're not buying the same thing, you're not priced the same way, and you're not experiencing the same thing. So- Can you address the issue of the modification because students were, I mean, I think it's undisputed at this point that students, OSU told the students, we're going online, you were extending the time which you can withdraw for the term, get a full refund with no, you don't need to apply. There's not gonna be, it's not gonna be discretionarily, it's not gonna be a discretionary matter. Right. So why, you know, why couldn't, why isn't that an acceptance when students went past that date and continued to go courses online? Why wasn't that an acceptance of that modification? Sure, so the first thing I'll point out too is, I think the eloquent statement made by the district court in Florida in the Rosado versus Berry University case, that the university hasn't provided sufficient support for its position that the student was required to threaten the Berry University, risk financial loss, and disrupt her academic career in order to preserve her contractual remedies. Again, this goes again to the fact that this isn't just some simple fungible product. So they're risking when the university said you would get a full refund. What happens is then you don't get the education. And so what opportunities did students really have to accept or reject and find a transfer opportunity within such a short period of time? They could take a term off. And then they would be set back an entire term, their entire career be set back, their time to be employed get set back. Again, we're not arguing that they didn't receive a degree with value. What we're saying is that they didn't get the experience that was promised them, that they paid for. And in doing that, in order to preserve their rights, they shouldn't have to, as the district court in Florida said, they shouldn't have to put their entire career in jeopardy at significant personal costs just to be able to preserve that. The idea of modification is really an after-the-fact justification. What the record shows actually happened is that the students continue to stay in the four-year program that they initially enrolled in because they had to mitigate their own damages. They had to mitigate their own harm because there were no other opportunities that were feasible. And OSU was doing the exact same thing, mitigating the amount of damage they were causing to the students. If, for example, after the governor issued its order, if OSU stopped providing any educational services at all, then the students, I don't think there'd be any question, would be entitled to the full refund of tuition and fees for that term. What they did instead was provide a lesser-priced service and something less than what the students had paid for for the rest of the term. That's what happened here. And that way, the students, by not dropping out, by not threatening the significant harm to themselves, that they are mitigating the amount of damages that are being done to them, and OSU is mitigating the amount of damages they are doing to the students. And so we believe that's what the facts show. Council, you've exceeded your time. We'll give you a couple of minutes for rebuttal, but we're here from the university now. Thank you, Your Honor. Thank you. May it please the court, Soap and Shaw for Oregon State University. There are four independently sufficient grounds to affirm the district court's ruling here, and plaintiffs have no legal basis for the partial refund they are seeking. I'll briefly go through the four, substitution, modification, waiver, and impossibility. First- Can I jump right in to the question that I'm trying to sort out? Originally, I believe your client argued that this contract is a semester or term contract. And then for purposes of summary judgment, you went along with the district court's assumption that this is a contract for the duration of enrollment, right? Correct? That's right. Why did you do that? In order to facilitate disposition of the case. So how does it facilitate disposition of the case to make that assumption about the contract? I think it's sort of accepting plaintiff's allegations about the characteristics of the contract. So even accepting plaintiff's allegations, best case for them, characterization of the contract, Oregon State was still entitled to prevail under the four issues I just mentioned. So the parties agreed to a substitute contract for remote education when after the governor's orders and Oregon State announced the transition to remote education, both plaintiffs paid tuition, they did not withdraw, they attended classes, and they received academic credit. And plaintiffs have no real response to this argument. The second ground is modification. So by that same conduct, plaintiffs agreed to Oregon State's modified term for remote education. And the district court found multiple items of consideration that the provision of a safe education during the COVID-19 pandemic and the extension of the deadline to withdraw and receive a full refund without academic penalty. So with regard to modification, I mean, Oregon follows the more traditional view of consideration, the bargain for exchange, there has to be something on each side. So if the contract, if we accept the district court's assumption that the contract was for the duration of enrollment, that means that the university already had an obligation to provide a safe learning environment, already had an obligation, and the students already had an obligation to pay for the education that they received. So I'm wondering, what is the exchange on both sides of this? Yes, the students get a little bit more time to make some financial decisions and whether to pursue their education under a new format, but what is the university getting? So a few things, Your Honor. So the question of consideration is relevant to only modification. The substitution question, consideration is sort of self-contained within the substitution, and waiver does not require consideration, and I suppose the consideration doesn't come into play for the impossibility issue as well. But on consideration, even an ACORN is sufficient consideration for a contract under Oregon state law. And so, as you mentioned, the plaintiffs received the extension of the deadline and the provision of a safe remote education during the COVID-19 pandemic. And Oregon state received the continued payment of tuition. But that's the problem. If the contract is for the duration of enrollment, Oregon state was already entitled to that. That's not anything new. Wouldn't the consideration be that the university gets to change from in-person instruction to online instruction? Yes, the discharge of that original obligation. Promise to, if the plaintiff's allegation is the contract is for in-person instruction and the university is saying we want to modify to be allowed to comply with the governor's orders and do online instruction, and then that's our consideration, then in exchange we're offering you another time to withdraw with a refund and no academic penalty. That's my understanding of the bargain for the modification. That's right, yes. And the chance to continue your education without an increased risk of- And I guess I'm having difficulty with that with the assumption that this contract was for the duration because it almost suggests that  I'm breaching because if I accept the assumption that I'm supposed to, as the university, provide in-person education for the duration of enrollment and I'm not going to do that, and because I'm not going to do that, here's your option. You can continue on with this new format, the remote education, and keep paying and I'll give you a little bit more time, but how is that a bargain for exchange as opposed to just accept my breach and keep going forward or not? Well, I think Your Honor is getting at this idea of waiver as well, that plaintiffs, by their conduct, can waive a term of a contract and that's exactly what they did and there's no consideration necessary for the waiver and under Oregon law, a party can waive even a material term of a contract. So I understand the difficulty with sort of the district court's assumption that the contract existed in this format, but even under that fiction, there are these four grounds, including impossibility, and once the governor's orders prevented Oregon State from providing in-person instruction, their performance was excused and plaintiffs are not entitled to damages. They, as an initial matter, Oregon courts do not generally award damages after a party's performance is excused due to impossibility and that's the Perla development case, it's also the Dorsey versus Oregon Motor Stages case. The plaintiffs in those cases sought damages after a party breached, well, a party's performance was excused due to impossibility and the Oregon courts did not award any damages. Do you agree? I think that's correct, that the governor's order made it impossible for them to provide in-person instruction. I don't know how we could conclude otherwise on these facts, but my thinking about this is that if we get to impossibility, then we have to deal with the Contracts Clause argument. Do you agree with that? I don't think so, Your Honor, because there's an exception under the Contracts Clause argument for orders related to public safety and health and I believe plaintiffs- So my reading of Oregon law is, and admittedly, I think Oregon law and the Oregon Constitutional Contracts Clause is muddled, but my reading of it is that federal law has a public purpose exception to the Contracts Clause and Oregon courts have talked about that, but have expressly not adopted it. And that is what the district court relied on and as far as I can tell, that's a misstatement of Oregon law under the Strunk case, which specifically says Oregon has not adopted the public purpose exception. So are you referring to a different exception? I think, Your Honor, no, I'm referring to that same public health exception. However, even assuming that that exception does not exist, this is not, plaintiffs cannot bring a constitutional challenge to the governor's orders. I believe the Oregon Supreme Court already upheld those orders in the Alcorn Baptist case. And so there's, the Contracts Clause claim is just not available to them in this particular matter. The other thing I would say about entitlement to damages is that it would be an end run around the district courts ruling on sovereign immunity. So Oregon law does not allow for unjust enrichment claims against the state and so what plaintiffs are seeking in terms of damages is basically unjust enrichment and there's Oregon case law characterizing that remedy as quasi-contractual, a quasi-contractual obligation, saying that the party will be unjustly enriched and that's the Vail Dean Canyon homeowner's case. And I think a third reason plaintiffs are not entitled to damages is that their own conduct operates as a waiver of condition or modification or substitution, as I mentioned earlier. So Oregon State's impossibility was excused, or performance was excused due to impossibility and there are many reasons why plaintiffs are not entitled to damages. The district court also did not abuse its discretion when it denied plaintiffs' request for discovery. Plaintiffs asked for discovery on three issues and the district court correctly determined that given the construction of the contract, accepting plaintiffs' allegations of the construction of the contract, these facts were not relevant to its disposition. If the plaintiffs were rejecting the substitution or modifications, did they have to give any notice to the university that, I think there's a mitigation of damages argument that plaintiffs are making. The only reason why we didn't withdraw, ask for a refund for the term, was because we wanted to mitigate damages. Is there any case law indicating one way or the other whether they had to tell the university that that's what they were doing, that they were rejecting the contract but they were staying only to mitigate damages? I think Oregon case law suggests that their conduct of paying tuition was notice that they were accepting the modified, substituted contract or waiving that provision and there are students, examples of students that did exactly that and they withdrew from spring 2020 semester and received full refunds and plaintiffs are not among those students. So under the objective theory of contracts, I understand you're saying that just by their conduct of staying and paying, they objected, objectively manifested acceptance of the contract as modified or substituted by the university. I'm asking since there seems to be no dispute, at least that the plaintiffs in this case did that, but they're still saying now that the only reason why we did that was to mitigate our damages. Is there any case law indicating whether if that was the reason why they were essentially continuing to perform their end of the bargain, that they had to at least tell the university, we don't accept this modification but we're going to mitigate damages by paying tuition and remaining enrolled? I think perhaps that could have been one step but if they had still paid tuition, I'm not sure that they would be able to. So you're arguing even if they had said that, you don't think that would have been good enough. But I'm just asking, is there a case law saying, is there a case law rejecting plaintiff's argument because there wasn't communicated? I can't think of a case, Your Honor, but I'm not sure that I've looked with specifically that issue in mind. I would say about plaintiff's argument about transfer, their ability to transfer is irrelevant. They could have taken a semester off, they could have found employment, they could have written a book. There are any number of activities they could have performed during that time and also, still to this day, plaintiffs do not name a single other comparable university to which they would have transferred, a university that was offering perhaps in-person education during this time. And as I mentioned earlier, many students rejected Oregon State's modified substituted offer, did not waive this provision of the contract, and that's at ER 114. The pandemic was challenging for everyone, including Oregon State. Oregon State shifted quickly to remote education at great expense to allow its students to make progress in their educations. The district court correctly applied Oregon law and this court should affirm on any of the four grounds mentioned earlier. Thank you. Thank you, counsel. Let's have two minutes for rebuttal. Your honors, I just want to make two points. With regards to Judge Rawlinson's comment about the contract clause, one point I want to make is that- What did I make about the contract? Judge Forrest. To the extent that Oregon State is arguing that the executive orders didn't impair the contract or that it's sort of exempted from impairing the contract it has with private parties, I'd point out the case that we had cited, Hughes v. State, which held that in that case, there was a reversal of a tax exemption. And what that court held was that the section three of that amendment, that what that is, is that the reversal of that prior provision is simply the government causing itself to breach the preexisting contract with the private party. And again, the Oregon Supreme Court's en banc decision in Hughes v. State said, quote, the state may not do with impunity. And it further stated that the private parties are entitled to contract damages. My second point will be this idea, again, of students can transfer or they can go to take a year off, write a book. Frankly, that's utter nonsense. These students are, this is the largest purchase of their lives, the biggest commitments that their families are making. And a lot of these kids, they need to graduate in order to help support their families. This whole idea that everyone has so much luxury. Counsel, are you suggesting that Judge Song's statement was nonsense? That what? That Judge Song's statement was nonsense? That anyone- That someone could take the time off? You said that's utter nonsense? That students aren't harmed for, and I apologize for over-speaking on this, but my only point is that this is a really important decision for families. It takes a great amount of commitment for families and their children and the students who go into this, and that at that moment in time. Again, I just wanna be very clear. The relief you're seeking here on behalf of a class, if you were to get that far, would be the difference in value between in-person versus remote instruction for spring 2020. Right, prorated for that amount of time, correct. All right, thank you, Counsel. Thank you to both counsel for your arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, FORREST, SUNG